23-7035. Council, you may proceed. Good morning. Jacqueline Esser, Assistant Federal Defender from the District of Hawaii on behalf of Appellant Mr. Anthony Armenta, and I plan to reserve three minutes for rebuttal. The district court abused its discretion in refusing to grant Mr. Armenta's motion to sever trial from that of his co-defendant Ward when there were mutually exclusive defenses and he sustained substantial and unmitigated prejudice that far exceeded the government's interest in judicial economy. The defenses in this case were not merely antagonistic, they were mutually exclusive. Mutually exclusive defenses exist when the core of the defense theory of one contradicts the core of the defense theory of the other in such a manner that the acquittal of one necessitates the conviction of the other, and that is exactly what we had in this case. Ward's theory of defense was that Mr. Armenta forced him, coerced him to commit the assault. His violent, abusive, controlling nature was a core of their defense theory because without it, his direct defense fails. Mr. Armenta's defense theory... Well, how did the joinder prohibit him or stop him from asserting that defense? So, in this case, there was substantial prejudice by the direct attack of Mr. Ward in that he... Why? How? Tell me how. He was able to elicit, without any prior notice, because under 404B he's not a government so it's not required, extremely inflammatory character evidence. Evidence that Mr. Armenta... Forced to do what he did. Well, this is the problem when we have such... That's a different problem. Antagonistic defenses. When Mr. Ward essentially became a second prosecutor in this case because if we didn't also now defend against the accusation that he was forced to commit the assault by Mr. Armenta, he was guilty. So not only were we defending against the government's case, we had to defend against Mr. Ward's case because if not, Mr. Armenta is guilty. That's the nature of the antagonism in this case. Well, if Ward was guilty, and if Ward was guilty also of coercing Armenta, that is an issue that a jury could separate and make an easy decision on. Not in this case. Not in this case because of the highly inflammatory character evidence that Mr. Ward, the co-defendant, introduced. Introduced evidence that he burned his girl... Mr. Armenta burns his girlfriend with a blowtorch all over her body and she's pregnant. And to corroborate this, the trial court allowed the mother of the girlfriend to get on the stand in tears, crying how she has seen these burns on her daughter's body. How is a jury supposed to wipe that from their minds when they're looking at the evidence and evaluating it as it's supposed to on an independent basis for Mr. Armenta? And I want to make this clear because I don't think it comes clear in our briefs, and I apologize for that, but there was no limiting instruction when that testimony came in. Was one requested? One was... One was requested. One was requested. We argued throughout the transcripts that there was no 401, 403 analysis conducted by the judge in any way. The trial court was only concerned about giving Mr. Ward his fair trial and allowing him to present evidence in support of his just defense, but he never once looked at how this evidence prejudices Mr. Armenta's right to a fair trial under the Fifth and Sixth Amendment and how you conduct any type of 401, 403 analysis or limited this in any way. The only limiting instruction as far as the evidence goes with the burning of the girlfriend's body was the general instruction given at the end of the close of evidence, it's jury instruction number 37, where it says evidence was introduced in the trial for a limited purpose. We specifically asked the judge to specify what that act it limited, and it refused to, and without that context, the jury has no idea what evidence it's supposed to limit in regards to evaluating the evidence independently for Mr. Armenta. Counsel, could I come back to the mutually antagonistic defense issue and ask you a question about it this way. Why couldn't the jury have found that Mr. Ward acted under duress but also have reasonable doubt as to whether Mr. Armenta assaulted the victims? So in order for, if the jury were to believe that Mr. Ward acted under duress, and it's not just duress by some other person, we're talking about the co-defendant in trial that Mr. Armenta forced him to commit it. If that's true, Mr. Armenta's guilty. Mr. Ward can't commit duress by the hands of Mr. Armenta without him being guilty for the crime. So Mr. Armenta cannot be found not guilty if Mr. Ward is found not guilty. So just the nature of the defenses in this case present a situation where they're completely exclusive. Well, they were both shooting at the people. And if Ward made Armenta do it, Ward would still be guilty, and maybe Armenta wouldn't be if he was coerced. So that is Ward's theory of defense, that Mr. Armenta shot at the men at the river, and then Mr. Armenta forced him to shoot at the man at the truck. But that was not the core defense of Mr. Armenta. The core defense of Mr. Armenta was that Ward acted on his own accord. He did not aid and abet him, and he committed the shooting. And that was also corroborated by the complainants who said that Mr. Ward shot first. So that's just the direct attacks that we have in this case regarding the co-defendants' defensive that make them mutually exclusive. Counsel, could you expand a little bit? You mentioned aiding and abetting, and I was interested in what you have to say about the prosecution's aiding and abetting theory for both defendants and how that affects the analysis. I mean, they did charge aiding and abetting, didn't they? Yes. And the jury was instructed on aiding and abetting? Yes. How does that affect your argument? Well, that was their theory, that Ward and Armenta came to the river together, and they both acted when they decided to shoot at the three men at the river that day. That was the government's theory. That was not our theory, and I think in the court's analysis, it doesn't look to the government's theory of defense in deciding whether the defenses are mutually exclusive. It looks to the core defendant one and the core defendant two. But if they're both charged with aiding and abetting, why wouldn't that affect the nature of their defenses? Why wouldn't it? I want to understand. Can I ask you to ask that in another way? I want to just make sure I understand it. Well, if they hadn't been charged with aiding and abetting, I think I'm following your argument. But when you add aiding and abetting in, how does that affect your argument? Well, that is, again, the government's theory. Well, it may be the theory, but it was presented to the jury, and for all we know, the jury may have relied on that theory. We don't know that, do we? We don't know, and that's the problem with mutually exclusive defenses, too, that when they're so antagonistic that they fuse together, and it's left with the jury not believing either defendant and going along with the government's theory. But as far as the— By the way, is the standard on mutually antagonistic defenses that they have to be 100% mutually antagonistic or something short of that, maybe substantially antagonistic? So the test is whether the core of defense one contradicts the core of the defendant two in such a manner that the acquittal one necessitates the conviction of the other. So there has to be a direct attack, and it has to preclude the jury from acquitting both of them. So it can't be just mere finger-pointing or just mere antagonism. It's more than that, and I don't know if to put percentage on it, if it's 100%. And I don't think you should be going down a rabbit hole and trying to theorize ways of that. Maybe there is a possibility the jury could do that, because you have to look at the core of the defenses in this case and how they were presented. And how they were presented in this case, they were mutually exclusive. Couldn't they have been just partially exclusive if the jury just believed some part of Ward's story or Ward's testimony in this case? Because he talked about both prior bad acts that you referred to as well as some duress that he said he was under from Mr. Armenta during the event itself. Could the jury have found Defendant Armenta was not guilty based on his defense and also found that Defendant Ward was not guilty based on the duress offense, but only basing that off the prior bad acts, in which case there wouldn't be any aiding and abetting either. See what I'm saying? Could they have found them both not guilty even by believing part of the story that Ward told? So I think that's what the government argues in its brief. And I had a hard time following that argument, but I think the court... That's why I'm asking. But I think what the government is arguing in your question is that the jury could have just looked at these inflammatory bad acts as why Armenta or why Ward acted under duress on that day, but that is not the facts. And again, we have to look at the core of the defense and that how it was presented and that it wasn't presented that way. Ward testified that, you know, he testified about he had seen Armenta do these bad acts, burn his girlfriend, threatened to murder his girlfriend if he didn't do what he said, but then also on that day, he had to prove that he wasn't able to leave. The duress caused him to not be able to leave. It was so strong he had to act. So he also had to prove and he testified that Mr. Armenta took a gun and pointed it at him and told him to shoot. So it wasn't the factual situation that the court is questioning about and the government argues. That's not what we had here. And so it's just a different situation. So in deciding whether they're mutually antagonistic in full, we have to assume that the jury would have accepted, if the jury accepted entirely Mr. Ward's testimony, are they mutually antagonistic? The test in the Tenth Circuit, the case law that I know you're all aware of, it talks about going to the core defense theory presented. So you're looking to the core of the defense theory, not so much speculating as to could the jury have done that or that. You look to the core of the defense theory. Didn't the victims testify that Mr. Armenta shot them? Didn't the victims testify that Mr. Armenta shot him? So, yes. So the testimony came out from the complainants, the government's case, that Mr. Ward had fired first and that Mr. Armenta then walked down from his car to the river bank and started shooting at the two men in the boat. That was the government's presentation of the evidence. Again, I just want to point, just with the brief time I have, as far as prejudice versus judicial economy, this was a two-day assault trial. Well, that's what I was getting at. Okay. I mean, you've got eyewitness victim testimony that Mr. Armenta shot them. So how do you get past prejudice? Again, it's the nature of the prejudice in this case. Because if you look at the case law, there's Pavetto, which this court held. There was prejudice because the co-defendant is the one who introduced criminal activity. But don't you have to look at the evidence presented at the trial in making that determination? For prejudice? Yes. And there is prejudice here because the co-defendant introduced evidence that would not have been admissible in his separate trial. It was just because of the nature of the joint trial here. It's the same as Pavetto, where the co-defendant introduced criminal activity, which the Tenth Circuit said this is substantial prejudice because in the government's case there was no record that he had a criminal activity. Same in our case. No evidence that Mr. Armenta had a prior criminal record. It was only admitted through the co-defendant. That evidence prejudices the jury in a way where they're not able to independently evaluate, especially without a limiting instruction, the evidence just to Mr. Armenta. Thank you, counsel. Thank you. And I'll reserve the remainder of my time. Thank you. May it please the Court. My name is Benjamin Traster, and I represent the United States. To find that the district court erred in declining to sever the joint trial of the defendant and his co-defendant, Kevin Ward, the defendant must show that the district court abused its discretion with respect to the three-prong test set forth in the Persley decision. As this Court was just discussing with counsel, that three-prong test involves mutual antagonism, showing that the two defenses were mutually antagonistic, showing that the joint trial risked compromise of a specific trial right or risked preventing the jury from making a reliable judgment. And finally, even if the defendant was able to satisfy those first two prongs, the defendant would have to show that the prejudice from the joint trial outweighed judicial economy. Let me start by talking about mutual exclusivity. In this case, and the Zafiro case by the Supreme Court shows that if there are theories that the two defendants could have presented that were even unlikely not mutually exclusive, then the defendant hasn't met that burden to show that the two defenses are mutually exclusive. So to show that, take Kevin Ward's testimony in his direct examination. Towards the end of his direct examination, he talked about, he was asked about what he knew about the shots that were being fired. And what he said was he was sitting on some rocks by underneath the bridge, and shots were fired, and he didn't know where those shots were coming from. We can come back to the fact that that was contradicted by the three witnesses and victims who testified that Kevin Ward was right there, and he fired the first shots. But that's Kevin Ward's theory, and when asked, he said he didn't know where those shots came from. He initially said in colorful language that Armenta started shooting, but he conceded that he couldn't see the boat and didn't know who was firing those shots. In the defendant's case, in his opening statement, he said shots were being fired, and he never implicated Kevin Ward in his opening statement, in his theory of the defense. For all the defendant knew, and based on what Kevin Ward testified to, as shots are being fired, Anthony Armenta doesn't know where those shots are coming from. He's already down by the riverbank, and he says shots are fired. Anthony Armenta said he goes back to his car to get a gun and eventually fires up, but Kevin Ward said he comes down from the rocks, and he's standing there, and he says that Anthony Armenta says, shoot the truck, shoot the truck. Those two defenses, I would submit, are not mutually exclusive, and the reason why is that based on all of the evidence that Kevin Ward introduced about his state of mind and his duress defense, he may have believed when Anthony Armenta turned to him and said shoot the truck that he was under duress, that he had no choice. Let me just make sure I'm understanding, Mr. Armenta, what you contend is Mr. Armenta's theory of defense is that he didn't fire the shots. Wasn't that his defense? And not entirely. He claimed that he walked back to the black SUV by the riverbank, which, again, no witness saw or testified to, got a gun at that point after Kevin Ward started firing and fired up. And, in fact, he goes on to say, to bolster this sort of pseudo self-defense. Well, okay, but isn't his defense that he didn't fire on the victims? That's correct. That's the theory of his defense. That's correct. All right. He had a gun. Mr. Ward had a gun. They both had guns. And someone fired towards the victims. If Mr. Armenta's defense is that he didn't fire at the victims and Mr. Ward's defense is he fired at them under duress, how are those defenses not mutually antagonistic? Well, they're not pointing the finger at each other. And that's a great point just to also note. Well, do you have to point the finger at each other? It's really a matter of how do you reconcile those defenses. I do think you have. You don't necessarily have to point the finger at each other. And the cases, all of the cases on mutual exclusivity, don't necessarily say that blame has to be cast. But what it does say is that the conflict has to be so intense. The guidance is that the conflict has to be so intense that the jury finds them both guilty. Essentially, jury throws up its hands and says, we don't know what to do because they're both lying. And they don't know what to do with that evidence. And so they find them both guilty. And that's not what you have in this case. If anything, what you have is, and this is exactly what the defendant argued in its initial motion to sever prior to the trial, mutually antagonistic in part. It's one directional. You have, I would argue that you can look at the duress defense and say that the duress defense doesn't necessarily require the guilt of Armenta. Ward's duress defense does not necessarily require the guilt of Armenta. Doesn't it, as counsel just told us, as defense counsel just said, it certainly does seem to. If we have to look at the core of the duress defense, which was these pre-existing bad acts as well as his threat to me at the moment before I shot, this is why I was under duress. If the jury believed that, then Mr. Armenta is guilty of aiding and abetting at a minimum. I'm not sure that he would be guilty of aiding and abetting.  Because Mr. Armenta at that point— I told him to shoot. His defense was he told me to shoot, and the reason I did it was because of these prior bad acts, and I know what he's capable of, and I'd seen these things, and he'd threatened me before. So when he told me to do it, I did it. If the jury believes that, if the jury believes that and says, all right, you, Mr. Ward, you're not guilty. We understand why you were under duress. We feel you're not guilty. But, oh, you, Mr. Armenta, who is guilty of essentially these prior bad acts, which are horrible, as well as threatening him at the moment, you are responsible through aiding and abetting. Why is that duress? Why isn't that exactly mutually exclusive? Because the core of Ward's defense, that duress defense saying he told me to shoot, doesn't negate the innocence of Armenta, and the reason why is that self-defense theory that I was discussing at the outset. And the reason why is, Armenta could believe he was under attack. Bullets are flying. He needs to tell his friends, shoot the truck, shoot the truck. He says shoot the truck in self-defense because he believes bullets are being fired around. Ward, at the same time, his belief based on everything he saw is that he had no choice. And again, this actually comes back to something the district court... That's the problem. There was no evidence of that. The defense that you're just saying could have been his defense, we don't really know. But the fact of the matter is... His defense was I didn't shoot at the victims. But the fact of the matter is that that's exactly what, in the Supreme Court's decision in Zafiro, I believe it's the concurrence by Justice Stevens. What he says is that, unlikely as it may be, it's the theories of defense that could be out there and do those negate. The problem is actually in the Persley, I believe it's the Persley decision, the problem that the court found in the Persley decision, and the district court mentioned this at trial, is the problem isn't the misfortune of trial with the two co-defendants here. The problem is there was no evidence of it. Ward said that shots were being fired. No one said anybody but Ward fired the first shots. Armenta said he went back to the truck to get a gun. Every one of the victims said Armenta pulled out a gun first and is holding the gun first at Braden Rich, one of the victims, and then he turns and holds the gun at the two other victims in the boat with his back turned to Kevin Ward, who's standing at the truck. Kevin Ward said he comes there and the defendant says, shoot the truck, shoot the truck. All three of the victims said that he, or two out of the three victims, I believe, said he jumped on the windshield and said get out of the truck, get out of the truck. The fact of the matter is neither of their defenses, there was no evidence really for either of the defenses. Kevin Ward's defense was exposed for inconsistencies is one way to put it. There's some stronger terms, I think, but the jury didn't have to believe Kevin Ward and the jury didn't believe Kevin Ward. Well, Armenta didn't put any evidence on the roll, did he? That's true, he did not. And so he has this... Doesn't that hurt his case a little bit? I think it does. I think it both hurts his case at trial and I think it hurts his case here as well because the fact of the matter is he's claiming to have had a defense theory but it's hard to make out exactly what that defense theory is except for the fact that he said that shots were being fired, he didn't know where they were coming. This is in his opening statement. Shots were being fired, he didn't know where they were coming from. On cross-examination of the victims, he asked... Counsel asked, I believe several times, what was your back? Was his back to Kevin Ward? Implying he didn't know where shots were coming from. And then he goes back to his truck and then he only fires up. That was also contradicted by the victims in this case. What would you... Just to boil it down, was the evidence presented at trial to support the conviction of Mr. Armista? To support the conviction? I think that's actually a really great question and to turn to the difference between this case and all of the other cases that discuss both mutual antagonistic defenses and, frankly, the issue of severance. Most of the cases that deal with... And I know I'm going to answer Your Honor's question, but most of the cases that deal with this issue of severance deal with complex conspiracies, bank fraud, drug cases. They involve cases where the government can put on, in essence, circumstantial evidence and say, we've built our case, and then you get defendants fighting with each other. That's not this case. This case was a violent crime. We have three uninvolved, I guess you would call them civilian witnesses, who were just out fishing. They come back from when they're fishing and they all see the same consistent story. Anthony Armenta is the first one asking for jumper cables and he pulls out a gun. He points the gun at, first, Braden Rich and then turns his attention to the victims at the river. And when he turns his... When Kevin Ward... Anthony Armenta turns to Kevin Ward at some point, says, pop him. Kevin Ward fires two shots into the truck and then Anthony Armenta goes and shoots the two boys that are in the river. And he hits one of those two boys right in the gut, basically, causing him to eventually have multiple surgeries. That, in a nutshell, is the evidence presented by all of the victims in this case. They were unimpeached. The fact of the matter is one of the victims was barely cross-examined, the victim who got shot. And that testimony contradicted almost everything that was testified to by Ward. So talk about the prejudice. Talk about, very quickly, to talk about the prejudice element. I would argue that the prejudice element isn't met both because of the victim's testimony but also because Ward wasn't particularly believable. So Ward testified about all this prior bad acts, which the district court absolutely correctly ruled could have come in in a separate trial. And there's cases that talk about... I want to say, although I might be getting it wrong, but it may be the Jones case that talks about the fact that a co-defendant's testimony at a joint trial doesn't necessarily mean that that co-defendant wouldn't be able to testify at the defendant's severed trial. So when you're talking about the fact that you have three victims who came and testified in this violent crime case, whether or not there was prejudice to the defendant, there wasn't prejudice. And even if there was prejudice, the judicial economy of having... When the acts of the defendant and the co-defendant are overlapping and so overlapping and intertwined, they came together. They left together. They were found together the next day. They were arrested together. Their acts were overlapping and intertwined. And to say that there needs to be separate trials when you have three victims who came and testified, three civilian victims who didn't ask for this, I think that the court was reasonable and within its discretion to say that any sort of prejudice, if there was prejudice, and the government doesn't concede that there was prejudice, is surely outweighed by judicial economy. Can we assume that the prior bad acts would have come in in a separate trial? Well, let me say, I'm not sure I want to say that can we assume. I think that there's certainly an argument to be made that they would. And the reason why I hedge and say that we wouldn't necessarily assume is because I think that actually addresses the fact that the defendant can't identify a specific, specific trial right. They can't say his confrontation rights were violated. They can't say exculpatory evidence that he couldn't present exculpatory evidence. He can't say that these, and the defense side's the case. Well, why can't they say, why isn't the right to due process? Well, because the fact of the matter is that the 404B evidence that came in, first of all, it wasn't procedurally invalid. The co-defendant didn't have to present notice of it. But second of all, that 404B evidence is in essence a discretionary decision also on the part of the court. It's not like confrontation. It's not like exculpatory evidence. It's not even like spousal privilege where the defense side's the case, United States versus Blunt. And I apologize, I don't have the citation. But they say it stands for the proposition that spousal abuse can't come in. But that's not what it stands for. It stands for the proposition that spousal privileged testimony is that kind of specific trial right. And so the fact is, is that they can't identify a specific trial right. The jury's decision on guilt or innocence was, the jury's decision was not based on any sort of prejudice. It was based on the victim's testimony. And for all these reasons, we would ask this court to affirm the defendant's conviction. Thank you, counsel. I think we've exhausted the time again. So we will consider the case submitted and counsel are excused.